**NOT FOR PUBLICATION**

```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| LAWRENCE E. PRATT | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 05-0942 (JBS) |
| v. | |
| CORRECTIONAL MEDICAL SERVICES, et al., | **OPINION** |
| Defendants. | |

Lawrence E. Pratt
#431068-365106C
Southwoods State Prison
215 Burlington Road
Bridgeton, NJ 08302
    Plaintiff Pro Se

Stephen E. Siegrist, Esq.
MURPHY & O'CONNOR, LLP
Commerce Center
1810 Chapel Avenue West
Suite 130
Cherry Hill, NJ 08002-4607
    Attorney for Defendant Correctional Medical Services and
    Nurse Practitioner Fran Green

Susan Marie Scott
Deputy Attorney General
OFFICE OF THE ATTORNEY GENERAL
R.J. Hughes Justice Complex
P.O. Box 112
Trenton, NJ 08625
    Attorney for Defendants Kathryn MacFarland and Karen Balicki

**SIMANDLE, District Judge:**

    This matter is before the Court upon (1) the motion of Plaintiff Lawrence Pratt ("Plaintiff") for reconsideration of this Court's October 25, 2006 Memorandum Opinion and Order and

(2) the motion of Defendants Nurse Practitioner Fran Green ("Nurse Green") and Correctional Medical Services, Inc.'s ("CMS") (collectively, the "CMS Defendants") for summary judgment. This action arises out of the lawsuit filed by Plaintiff, acting pro se, claiming that Defendants and other administrators and medical personnel at South Woods State Prison ("SWSP") were deliberately indifferent to Plaintiff's medical needs (specifically, his deteriorating hip.) Plaintiff seeks damages for claims of civil rights violation, specifically for violation of the Eighth Amendment prohibition against cruel and usual punishment. For the reasons expressed below, (1) Plaintiff's motion for reconsideration will be denied, and (2) the CMS Defendants' motion for summary judgment will be granted.

I.     **BACKGROUND**

On February 17, 2005, Plaintiff filed the instant lawsuit against Defendants CMS, Nurse Green, Dr. Maurice Rosman, Kathryn MacFarland and Karen Balicki, among others, claiming that while Plaintiff was incarcerated at the South Woods State Prison ("SWSP"), administrators and medical personnel at the prison were deliberately indifferent to Plaintiff's medical needs (specifically, his deteriorating hip.) Plaintiff seeks damages for claims of civil rights violations, specifically for violation of the Eighth Amendment prohibition against cruel and unusual punishment. (Complaint ¶ 5a and 5b.)

Medical care at SWSP is provided by Defendant CMS pursuant

2

to a contract with the State of New Jersey.  For the purposes of this opinion, the Court will assume that all medical personnel discussed in the record as having provided medical care to Plaintiff at SWSP (e.g., Nurse Green, Nurse Akey, Nurse James, Dr. Rosman and Nurse Mish) are employees of CMS.  Plaintiff was admitted to the state prison system on April 25, 2002.  (Def.'s Statement of Undisputed Facts "SUF" ¶ 11.)  On that date, Plaintiff was evaluated by Nurse Green who performed a nursing intake review.  (Id.)  Also on April 25, 2002, a nurse practitioner performed a physical examination of Plaintiff and ordered blood work.  (Id.)  Plaintiff arrived at SWSP on May 28, 2002 where a nurse again performed an intake evaluation and Plaintiff underwent a physical examination.  (Id. ¶ 12.)

From the date of his arrival at SWSP on May 28, 2002 until May 26, 2005, Plaintiff was seen at least 18 times by members of the prison's medical staff or outside consulting medical personnel.  (SUF ¶¶ 8-36.)  The first indication in the summary judgment record that Plaintiff complained of hip pain was on August 28, 2002 when Plaintiff was seen by a Nurse Akey.  (Id. ¶ 13.)  Nurse Akey gave Plaintiff Advil for his pain.  (Id.) According to his medical records, Plaintiff was seen again with complaints of him pain by a Nurse James on December 12, 2002. (Id. ¶ 15.)  According medical records, Plaintiff's prison job was causing him hip pain.  (Id.)  Nurse James gave Plaintiff 200 mg of ibuprofen and a balm to apply to the affected area of his

3

hip.  (Id.)

In 2003, Plaintiff had few medical appointments and none involved complaints of hip pain.  (Id. ¶ 18.)  Of note to the matter before the Court, however, is the fact that Plaintiff was seen by Nurse Green on January 15, 2003 for a tuberculosis test. (Id.)  There is no indication in the record that Plaintiff complained of hip pain to Nurse Green during his appointment with Nurse Green.

Beginning in 2004, Plaintiff began again to complain of hip pain.  Specifically, in February of 2004, Plaintiff complained of hip pain and was evaluated by Dr. Maurice Rosman, D.O., a CMS employee who ordered that Plaintiff's hip be x-rayed.  (Id.)  The x-ray was performed on February 25, 2004 and was reviewed by Dr. Rosman on March 5, 2004, who on March 18, 2004 made an orthopedic consult request and ordered that Plaintiff take 600 mg. of Motrin for his pain.  (Id. ¶¶ 21-22.)  A Nurse Mish entered a note in Plaintiff's medical chart that Plaintiff should have a "two week lay-in" due to hip difficulties while Plaintiff awaited an appointment for an orthopedic consult.  (Id.)  Plaintiff never showed up for his scheduled April 12, 2004 orthopedic consult appointment.  (Id. ¶ 23.)  On April 18, 2004, Plaintiff was transferred to Gloucester County Court for a hearing and the nursing staff at SWSP supplied Plaintiff with a four-day supply of medication to take with him.  The medical staff also rescheduled an orthopedic appointment that Plaintiff had missed

4

on April 12, 2004, but Plaintiff also missed his new appointment on April 28, 2004.  (Id.)

Plaintiff was eventually seen by an orthopedist and Dr. Rosman reviewed the orthopedist's consult report on May 26, 2004 and discussed it and the possibility of surgery with Plaintiff on May 28, 2004.  Later in 2004, Dr. Rosman changed Plaintiff's medication to Darvocet and in July of 2004, Plaintiff was sent to New Jersey State Prison in Trenton so that he could access treatment at an orthopedic clinic.  (Id. ¶ 25.)  After reviewing matters again with Rosman in August of 2004, Plaintiff decided to have hip surgery and the surgery was scheduled.  On March 1, 2005, Plaintiff was transferred to St. Francis Medical Center for his hip surgery, (Id. ¶ 30.), and received a total hip replacement.  (Id.)  On March 7, 2005, Plaintiff returned to SWSP, was placed in the extended care unit of the prison for post-operative recuperation and was given pain killers.  (Id.)

After Plaintiff filed his Amended Complaint on February 17, 2006, Defendants CMS and Nurse Green Answered on March 31, 2006.  Defendants state that Dr. Rosman has yet to file an answer has he has not yet been served.[1]  On October 17, 2006, Defendants CMS

---

[1] The Court's review of the docket confirms CMS' representations that Rosman has yet to be served.  The summons was returned unexecuted on March 21, 2006 because the United States Marshals Service was unable to located Dr. Rosman after representatives at CMS refused service and informed the Marshals Service that Dr. Rosman was out on medical leave. [Docket Item No. 11.]  This Court had previously extended the time for service on all defendants by Order entered January 20, 2006 [Docket Item

and Nurse Green filed this motion for summary judgment to which Plaintiff filed opposition on November 2, 2006.  The Court has considered all submissions and did not hear oral argument on these motions.

## II.   PLAINTIFF'S MOTION FOR RECONSIDERATION

Defendant Kathryn MacFarland serves as the Administrator of SWSP while Defendant Karen Balicki serves as Associate Administrator of SWSP.  As the Administrator and Associate Administrator of a state prison, Defendants MacFarland and Balicki are state officials.  On October 25, 2006, the Court entered a Memorandum Opinion and Order: (1) granting MacFarland and Balicki's motion to dismiss because MacFarland and Balicki are state officials who were acting within their official capacities, Plaintiff's claims for money damages against them as state officials are barred by the Eleventh Amendment; and (2) granting summary judgment in favor of MacFarland and Balicki in their individual capacities because the record "clearly indicates" that MacFarland and Balicki neither denied Plaintiff access to medical care nor were deliberately indifferent to Plaintiff's medical needs.  Pratt v. Correctional Medical Servs., Inc., No. 05-942, slip. op. at 4-6 (D.N.J. Oct. 25, 2006).

---

No. 7], even though the 120-day period for service had long since expired, pursuant to Rule 4(m), Fed. R. Civ. P.  This Court declines to extend the period for service upon Dr. Rosman a second time in this two-year-old case.  The Complaint against defendant Rosman will be dismissed for lack of timely service of process.

Local Civil Rule 7.1(i) of the United States District Court, District of New Jersey, governs the instant motion for reconsideration.  Rule 7.1(i) requires that the moving party set forth the factual matters or controlling legal authority that it believes the court overlooked when rendering its initial decision.  Whether to grant reconsideration is a matter within the district court's discretion, but such a motion should be granted only where such facts or legal authority were presented but overlooked.  See DeLong Corp. v. Raymond Int'l Inc., 622 F.2d 1135, 1140 (3d Cir. 1980); Williams v. Sullivan, 818 F. Supp. 92, 93 (D.N.J. 1993).  "A party seeking reconsideration must show more than a disagreement with the court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden."  Panna v. Firstrust Sav. Bank, 760 F. Supp. 432, 435 (D.N.J. 1991) (internal citations omitted).  Instead, "the party seeking reconsideration [must show] at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available . . . ; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."  Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999); NL Indus. Inc. v. Commercial Union Ins. Co., 935 F. Supp. 513, 516 (D.N.J. 1996).  Furthermore, the Court will grant a motion for reconsideration only if the movant establishes that the Court

7

overlooked "dispositive factual matters or controlling decisions of law." See Rouse v. Plantier, 997 F. Supp. 575, 578 (D.N.J. 1998); Starr v. JCI Data Processing, Inc., 767 F. Supp. 633, 635 (D.N.J. 1991).

In his motion, Plaintiff argues that his condition was well documented since his arrival at SWSP, that Defendants MacFarland and Balicki knew of the condition and the court overlooked the documentation of his illness that "clearly shows that Defendants MacFarland and Balicki were fully aware of his medical condition several years ago." (Pl.'s Br. at ¶ 10.) Thus, Plaintiff argues that the Court should reconsider its October 25, 2006 Memorandum Opinion and Order. In addition, Plaintiff argues that because he has not been appointed counsel, he did not "receive anything in writing advising him that he had a certain amount of time to respond to Defendants' motion for summary judgment, or had to respond at all."

The Court will deny Plaintiff's motion for reconsideration. In its October 25, 2006 Memorandum Opinion and Order, the Court did not overlook any relevant fact or legal authority, including any documentation of Plaintiff's illness that demonstrated that either MacFarland or Balicki were aware of Plaintiff's condition. Indeed, the October 25, 2006 Memorandum Opinion and Order dismissed Plaintiff's claims as barred by the Eleventh Amendment. Moreover, as an alternative grounds for granting judgment in favor of MacFarland and Balicki, the Court held that MacFarland

8

and Balicki were not deliberately indifferent and documented undisputed facts that Plaintiff was seen at least 18 times by members of the prison's medical staff or outside consulting medical personnel, (Def.'s Statement of Material Facts ¶ 4-5), and that his medical care included pain medication, x-rays, several consultations with orthopedic specialists and total hip replacement surgery (and accompanying physical therapy) in 2005. (Id. ¶ 40-43.)  As such, Plaintiff has failed to demonstrate that this Court overlooked any factual matters (or controlling legal authority, for that matter) in its October 25, 2006 Memorandum Opinion and Order.  Moreover, there is no intervening evidence or need to correct any error of law or fact.  Rather, Plaintiff merely reasserts the same allegations he made in his Complaint and provides no new evidence in support of his motion. Plaintiff's motion for reconsideration will be denied.

**III.  THE CMS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

    **A.  Legal Standard**

In order to successfully prove an Eighth Amendment violation, a plaintiff must demonstrate that he was subjected to "cruel and unusual punishment."  U.S. Const. Amend. VIII.  It is well-settled that those actions which are "incompatible with the evolving standards of decency" or that impose "unnecessary and wanton infliction of pain" violate the Eighth Amendment.  Estelle v. Gamble, 429 U.S. 97, 102-03 (1976) (citations omitted); see Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 417 (3d

9

Cir. 2000).  The Estelle Court interpreted this broad standard to mean that prison officials can be held liable for Eighth Amendment violations upon a showing of "deliberate indifference to serious medical needs of prisoners," meaning the "unnecessary and wanton infliction of pain."  Id.  Thus, a successful claimant must prove that Defendant operated with deliberate indifference to the claimant's serious medical condition.  See id. at 106.

Furthermore, an inmate must prove not only that the prison official acted with deliberate indifference, but that the deliberate indifference was "to a substantial risk of serious harm."  Farmer v. Brennan, 511 U.S. 825, 828 (1994).  Deliberate indifference will only be found where "the official knows of and disregards an excessive risk to inmate health or safety."  Id. at 837.  Accordingly, deliberate indifference can be shown where "knowledge of the need for medical care is accompanied by the intentional refusal to provide that care, or where short of absolute denial, necessary medical treatment is delayed for non-medical reasons," as well as denial of "reasonable requests for medical treatment."  Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993) (quoting Monmouth County v. Lanzaro, 834 F.2d 326 (3d Cir. 1987)).[2]

---

[2] Prison authorities are allowed considerable latitude in the diagnosis and treatment of prisoners' medical conditions. See Durmer, 991 F.2d at 67.  "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in

10

### B. <u>Defendant Nurse Practitioner Fran Green</u>

Defendants argue that Nurse Green is entitled to summary judgment because, based on the limited contact she had with Plaintiff, no reasonable jury could find that she was deliberately different to Plaintiff's serious medical needs. In his opposition papers, Plaintiff has failed to directly address the arguments made by the CMS Defendants regarding whether summary judgment in favor of Nurse Green is appropriate.

This Court will grant summary judgment in favor of Nurse Green. Plaintiff does not dispute that he had very limited contact with Nurse Green and that Nurse Green never was indifferent to Plaintiff's medical needs. According to the Statement of Material Facts, Nurse Green only treated Plaintiff on two occasions and only one of those occasions involved Plaintiff's complaints of hip pain. (Statement of Material Facts ¶¶ 17-18.) First, on December 18, 2002, Nurse Green saw Plaintiff when he complained of hip pain. (<u>Id.</u> ¶ 17.) Nurse Green ordered that Plaintiff's hip be x-rayed and that Plaintiff should continue his course of pain killers. (<u>Id.</u>) Second, on January 15, 2003, Nurse Green saw Plaintiff for his regularly

---

state tort law." <u>United States ex rel. Walker v. Fayette County, Pa.</u>, 599 F.2d 573, 575 n.2 (3d Cir. 1979) (quoting <u>Westlake v. Lucas</u>, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). Only where a prison official has acted with deliberate indifference will those actions affront "evolving standards of decency." <u>Estelle</u>, 429 U.S. at 106. Indeed courts, have found deliberate indifference where a prisoner's medical needs were all but ignored. <u>See Andrews v. Camden County</u>, 95 F. Supp. 2d 217 (D.N.J. 2000).

11

scheduled tuberculosis test. (Id. ¶ 18.) There is no evidence that during this meeting Plaintiff even complained of hip pain. On these undisputed facts, no reasonable jury could conclude that Nurse Green was deliberately indifferent or "knew[] of and disregard[ed] an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. Accordingly, summary judgment in favor of Nurse Green is appropriate.

### C. Defendant Correctional Medical Services, Inc.

CMS argues that, because the medical care at SWSP is provided by CMS, a private company acting pursuant to a contract with the State of New Jersey, CMS is entitled to summary judgment. Specifically, CMS argues that as a private corporation performing a governmental function, it may not be held vicariously liable under 42 U.S.C. § 1983. In his opposition, Plaintiff fails to directly address CMS' argument.

This Court agrees with CMS and will grant summary judgment in their favor. CMS cannot be held liable for the acts of its employees or agents under the theories of respondeat superior or vicarious liability under 42 U.S.C. § 1983. Natale v. Camden County Corr. Facility, 318 F.3d 575, 583 (3d Cir. 2003); Hernandez v. Cullison, 2006 U.S. Dist. LEXIS 45505, at *36 (D.N.J. June 26, 2006). As a private corporation performing a municipal function, CMS may not be held vicariously liable under 42 U.S.C. § 1983 unless Plaintiff can show that "a form of constitutional deprivation resulted from an official custom of

12

policy, or alternatively, from the actions of an official with 'final authority to establish municipal policy.'"  Taylor v. Plousis, 101 F. Supp. 2d 255, 263-65 (D.N.J. 2000)(quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986)); Frierson v. Green, 2006 U.S. Dist. LEXIS 58495, at *10 (D.N.J. Aug. 21, 2006).  In order for a defendant to be held liable under such a theory, a plaintiff must demonstrate that the government defendants -- in this case, the government's contractor -- had a policy or custom that caused the complained of injury.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978); Natale, 318 F.3d at 583; Hernandez, 2006 U.S. Dist. LEXIS at 36.

Here, as is Taylor and Frierson, Plaintiff presents no evidence to support the existence of a policy or custom, enacted by CMS, that resulted in the alleged deliberate indifference to the Plaintiff's medical needs regarding his hip or the constitutional violation he alleges.  Moreover, Plaintiff failed to introduce any evidence that any CMS official with final policymaking authority acted with deliberate indifference to his serious medical needs.  Indeed, the medical evidence in the record establishes that CMS was responsive to Plaintiff's medical needs, having treated Plaintiff over eighteen times for his complaints of hip pain culminating in total hip replacement surgery.  Even if Plaintiff did not receive sufficient pain management or timely medical treatment, there is no evidence that such a failure was caused by a policy or custom adhered to

13

officially or unofficially by CMS or its employees. In the absence of evidence to the contrary, there is no material factual dispute that CMS cannot be directly liable for the alleged Eighth Amendment violation perpetrated by its employees, and Plaintiff's constitutional claim against it cannot succeed. As such, summary judgment in favor of Defendant CMS is appropriate.

## IV. CONCLUSION

For the reasons expressed above, this Court will (1) deny Plaintiff's motion for reconsideration, and (2) grant Defendants' motion for summary judgment in favor of CMS and Nurse Green. Finally, the Complaint will be dismissed against Dr. Rosman due to the failure of service of process under Rule 4(m), Fed. R. Civ. P.

**May 9, 2007**               **s/ Jerome B. Simandle**
Date                          JEROME B. SIMANDLE
                             U.S. District Judge